UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARK JONES,

        Plaintiff,                               Case No.: 3:14-cv-56

vs.

COMMISSIONER OF SOCAL SECURITY,      District Judge Thomas M. Rose
                                                     Magistrate Judge Michael J. Newman

        Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"). This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 9), the Commissioner's memorandum in opposition (doc. 11), Plaintiff's reply (doc. 12), the administrative record (doc. 7),[2] and the record as a whole.

**I.**

**A. Procedural History**

Plaintiff filed for DIB on April 5, 2010 alleging a disability onset date of March 9, 2010. PageID 168-74. Plaintiff suffers from a number of impairments including, among others, degenerative joint disease of the right knee, coronary artery disease (CAD), seizure disorder, depressive disorder, and anxiety disorder. PageID 68.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

After initial denial of his applications, Plaintiff received a hearing before ALJ David Redmond. PageID 85-108. The ALJ issued a written decision on October 12, 2012 finding Plaintiff not disabled. PageID 66-78. Specifically, the ALJ's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015;

2. The claimant has not engaged in substantial gainful activity since March 9, 2010, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*);

3. The claimant has the following severe impairments: degenerative joint disease of the right knee[;] coronary artery disease (CAD) with residuals of myocardial infarction (MI); seizure disorder; depressive disorder; and anxiety disorder (20 C.F.R. §§ 404.1520(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526);

5. The undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b)[3] subject to: no exposure to unprotected heights, moving machinery, or other dangerous instrumentalities; lift 10 pounds maximum; the latitude to sit for 15 minutes each hour; limited to unskilled work featuring no more than occasional personal contacts and no production quotas;

---

[3] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Very heavy work "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." *Id.* § 404.1567(e). An individual who can perform very heavy work is presumed also able to perform heavy, medium, light, and sedentary work. *Id.* Heavy work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." *Id.* § 404.1567(d). An individual who can perform heavy work is presumed also able to perform medium, light, and sedentary work. *Id.* Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* § 404.1567(c). An individual who can perform medium work is presumed also able to perform light and sedentary work. *Id.* Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

    6.       The claimant has is unable to perform any past relevant work (20 CFR 404.1565);

    7.       The claimant was born [in] 1958, and was 51 years old, which defined him as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563);

    8.       The claimant has a limited education and is able to communicate in English (20 CFR 404.1564);

    9.       Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

    10.      Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a));

    11.      The claimant has not been under a disability, as defined in the Social Security Act, from March 9, 2010, through the date of this decision (20 C.F.R. § 404.1520(g)).

PageID 68-78.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 51-53. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

    **B.**    **Evidence of Record**

In his decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 68-76. Plaintiff, in his Statement of Errors, also summarizes the evidence of record. Doc. 9 at PageID 344-47. The Commissioner's response to Plaintiff's Statement of Errors refers the Court to the ALJ's recitation of relevant evidence and offers no objections to

Plaintiff's summary of relevant facts.  Doc. 11.  Accordingly, except as otherwise noted in this Report and Recommendation, the undersigned incorporates the ALJ's recitation of the evidence as well as Plaintiff's undisputed summary of the evidentiary record.  Where applicable, the Court will identify the medical evidence relevant to this decision.

## II.

### A.  Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.  42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007).  In performing this review, the Court must consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled.  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In his Statement of Errors, Plaintiff argues that the ALJ erred in: (A) assessing and weighing the medical opinion evidence of record; (B) determining his RFC; and (C) assessing his credibility and allegations of disabling symptoms and limitations.[4] Doc. 9 at PageID 351-60. Having carefully reviewed the administrative record and the parties' briefs, and also having carefully considered the ALJ's analysis leading to the non-disability finding here at issue, the Court finds the ALJ carefully and reasonably reviewed the record, appropriately considered the medical source evidence at issue (and applied the "good reasons" rule with respect to that evidence), appropriately considered Plaintiff's allegations of disabling symptoms and limitations and reasonably concluded Plaintiff was not fully credible, and properly determined Plaintiff's RFC. Thus, as more fully explained herein, the Court finds the ALJ's decision supported by substantial evidence and recommends that the Court affirm the ALJ's non-disability finding.

### A. Medical Source Opinions

Plaintiff sets forth three arguments regarding the ALJ's assessment of medical source evidence: (1) the ALJ erred in rejecting the opinion of Plaintiff's treating physician, Robert Kneisley, M.D.; (2) the ALJ erred in rejecting the opinion of examining physician William O.

---

[4] Implicit in Plaintiff's arguments is the contention that he is limited to sedentary work. If that were the case, because Plaintiff was an individual "closely approaching advanced age" on the alleged onset date, the Medical-Vocational Guidelines ("Grid") would direct a finding of disabled. *See* doc. 9 at PageID 351; 20 C.F.R. Part 404, Subpart P, Appendix 2 § 201.10. The ALJ considers the Grid "in the fifth and final stage of the disability determination, after it has been determined that the claimant has not met the requirements of a listed impairment but is nevertheless incapable of performing past relevant work." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). The Grid considers the vocational factors of age, education, work experience, and maximum sustained work capability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a). A plaintiff's "maximum sustained work capability" is categorized as one of five "exertional levels" -- including the light and sedentary exertional levels -- and is defined as "[t]he highest functional level a person can perform on a regular work basis[.]" SSR 83-10, *6. These exertional levels are defined "in terms of the primary strength activities required." *Id*.; *see also* 20 C.F.R. § 404.1567. For the reasons set forth *infra*, the Court finds the ALJ's determination -- that Plaintiff retains the RFC for a limited range of *light* work -- supported by substantial evidence.

Smith, M.D.; and (3) the ALJ erred in his reliance on the opinions of non-examining state agency reviewers Steve McKee, M.D. and Ali Shadchehr, M.D. Doc. 9 at PageID 351, 354, 356.

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians and psychologists top the hierarchy. *Id*. "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Id*. "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 385 (6th Cir. 2013) (citation omitted) (alterations in original). This requirement is known as the "treating physician" rule. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citation omitted). Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2); *see also Blakley*, 581 F.3d at 406. Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the

treating physician's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*.

Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. at 406; *see also* 20 C.F.R. § 404.1527(c). In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their source[.]" *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

The Court acknowledges that an ALJ is not required to accept a physician's conclusion that his or her patient is "unemployable." Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion -- that his or her patient is disabled -- is not "give[n] any special significance." 20 C.F.R. § 404.1527(d)(3); *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)

(stating that "[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician").  However, "[t]here remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference."  *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

### 1. Treating Physician

Here, Plaintiff's treating physician Dr. Kneisley opined that, in an eight-hour work day, Plaintiff could occasionally lift up to ten pounds; stand for two hours total; walk thirty minutes at a time; and sit for two hours total.  PageID 330.  The ALJ assigned "no weight" to Dr. Kneisley's opinion because he found it inconsistent with the evidence of record; namely, Dr. Kneisley's medical records, other treatment records, and Plaintiff's work history.  PageID 69.  Plaintiff's argument in this regard focuses entirely on the ALJ misstating Dr. Kneisley's opinion in rejecting the same -- specifically, the ALJ stated that, "Dr. Kneisley opined the [Plaintiff] could . . . sit for *20 minutes* . . . in an eight-hour shift[,]" when, in actuality, Dr. Kneisley opined that Plaintiff could sit for up to two hours per work day.   PageID 69 (emphasis added); PageID 330.  Plaintiff argues that the ALJ's misstatement of Dr. Kneisley's sitting limitation renders his entire analysis of Dr. Kneisley's opinion flawed, because the ALJ was "looking for support for a far more restrictive degree of limitation than Dr. Kneisely actually opined."  Doc. 9 at PageID 352.[5]

The undersigned finds that -- despite the misstatement -- the ALJ gave "good reasons" for rejecting Dr. Kneisley's opinion.  The ALJ did not focus on Dr. Kneisley's sitting limitation in

---

[5] Plaintiff only challenges the ALJ's misstatement of the treating physician's limitations, and does not argue that the ALJ failed to properly address the controlling weight step.  *See* doc. 9 at PageID 351-53.  This Court has previously held that the failure to address the controlling weight step of the treating physician analysis amounts to reversible error.  *See Aytch v. Comm'r of Soc. Sec.*, No. 3:13-cv-135, 2014 WL 4080075, at *4 (S.D. Ohio Aug. 19, 2014).  By failing to present this argument in his Statement of Errors, the undersigned concludes that any such argument is waived.  *See Dyamond v. Comm'r of Soc. Sec.*, No. 3:13-cv-117, 2014 WL 294464, at *2 (S.D. Ohio Jan. 27, 2014) (stating that "[f]ailure to raise an issue in the Statement of Errors constitutes waiver of any additional claim") (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2001)).

rejecting his opinion; to the contrary, he rejected the opinion "in its entirety" due to its inconsistency with the evidence of record. PageID 69. Specifically, with regard to Plaintiff's CAD and seizure disorder, the ALJ relied on the fact that both "Dr. Kneisley's and Dr. Mohammad's records reflect [Plaintiff] doing very well on his medications when he had them"; Plaintiff received a "Class I New York Health Association rating" when he underwent stress testing; and Plaintiff's work history has been "at the very heavy level" despite "multiple MI's [myocardial infarctions]." *Id.* Regarding Plaintiff's knee condition, the ALJ noted that Dr. Kneisley did not conduct an MRI on Plaintiff's knee before diagnosing osteoarthritis, and that Plaintiff failed to appear or follow-up after Dr. Kneisley scheduled him for physical therapy. PageID 69, 274. The ALJ further stated that Plaintiff ceased working because he was fired after arguing with his supervisor -- not because his allegedly disabling impairments precluded him from working at that time. *See* PageID 69. Plaintiff points to no evidence in the record to suggest that the ALJ's findings in this regard are incorrect, or are otherwise unsupported by substantial evidence.

Thus, while Plaintiff is correct that the ALJ misstated a limitation in Dr. Kneisley's opinion, such error is harmless and does not undermine the ALJ's analysis and ultimate non-disability finding. *See NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766 n.6 (1969).

### 2. Examining Physician

Plaintiff also argues that the ALJ erred in rejecting examining physician Dr. Smith's opinion that Plaintiff has the ability to perform only "sedentary work that does not involve standing, bending, walking, and lifting." Doc. 9 at PageID 356; PageID 278. Specifically, Plaintiff argues that the ALJ mischaracterized Dr. Smith's statements regarding the use of a cane, and relied on this mischaracterization in rejecting his opinion. Doc. 9 at PageID 356.

Dr. Smith stated that Plaintiff "has used a cane to walk for the past 5 years"; later elaborated that "[h]e can walk without a cane but his gait is worse than when he has a cane"; and concluded that Plaintiff "needs a cane to support his right leg." PageID 277-78. After detailing the findings of Dr. Smith's examination, the ALJ found that Plaintiff's "very heavy" work history for the last five years undermined Dr. Smith's statements regarding Plaintiff's use of a cane. PageID 70.

Substantial evidence supports the ALJ's decision to accord Dr. Smith's opinion "no weight." PageID 70. The record is filled with contradictions regarding which knee causes or contributes to Plaintiff's alleged disability -- a significant issue that the ALJ discussed in detail and that Plaintiff fails to address in either of his briefs. *See* PageID 70. Dr. Kneisley, for example, performed an x-ray and gave Plaintiff an injection in his left knee; at the hearing, Plaintiff testified that his left knee causes him pain. PageID 70, 89-90, 267. However, when Dr. Smith examined Plaintiff in September 2010, he complained of right knee pain -- necessitating the use of a cane -- and "stated he has never had any problems with his left knee." PageID 278. Based on Plaintiff's new complaint, Dr. Smith changed his x-ray order from Plaintiff's left knee to his right knee; the right knee x-ray was normal. *Id.* Thereafter, Dr. Smith described Plaintiff's right knee as "stable[,]" and without "local swelling" or "discoloration." *Id.* While Dr. Smith stated that Plaintiff's "right knee . . . has been injured in the past" and that he had "an arthroscopy in 2006," there is no evidence in the record to support either of these findings. *Id.*

Further, during the vast majority of the time period that Plaintiff allegedly "need[ed] a cane to support his right leg," PageID 278, (*i.e.,* the five years preceding the evaluation with Dr.

Smith[6]), Plaintiff was doing "very heavy work that required walking eight hours and lifting over one hundred pounds." PageID 70. In light of the complete lack of objective evidence supporting a right knee injury or treatment (both in the record as a whole and in Dr. Smith's examination), the unexplained shift from reporting left knee to right knee pain, and Plaintiff's work history immediately preceding his examination with Dr. Smith, the ALJ reasonably questioned the veracity of Dr. Smith's findings and reasonably discounted his opinion.

Accordingly, the ALJ's assessment of Dr. Smith's opinion is supported by substantial evidence in the record, and Plaintiff's argument should be overruled. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (defining substantial evidence as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); *see also Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("even if there is substantial evidence in the record that would have supported an opposite conclusion[,]" the Court must give deference to the ALJ's decision if it is supported by substantial evidence) (citations omitted).

### 3. Non-Examining Physicians

Plaintiff also argues that the ALJ erred in his assessment of the state agency reviewing physicians' opinions. Doc. 9 at PageID 354-56. On October 6, 2010, Dr. McKee opined that Plaintiff was capable of light exertion work activity with postural and environmental limitations; could occasionally lift or carry twenty pounds; and frequently lift or carry ten pounds. PageID 70, 287-93. Dr. Shadchehr affirmed Dr. McKee's assessment on June 2, 2011. PageID 321. The ALJ gave these opinions "significant weight." PageID 70.

---

[6] Plaintiff stopped working in March 2010 and was examined by Dr. Smith in September 2010. PageID 89, 278.

"Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical . . . consultant[.]" 20 C.F.R. § 404.1527(e)(2)(ii).  Such explanation must be "meaningful."  *Ott v. Comm'r of Soc. Sec.*, No. 1:08-CV-00399, 2009 WL 3199064, at *3 (S.D. Ohio Sept. 29, 2009).  "After assessing the weight accorded medical source evidence, ultimately, an ALJ can properly rely on the conclusions of a non-examining, record reviewing physician to support an RFC assessment." *Cooley v. Comm'r of Soc. Sec.*, No. 1:08-cv-499, 2009 WL 2982881, at *3 (S.D. Ohio Sept. 15, 2009) (citation omitted).  Relying on non-examining physicians is permissible "because the Commissioner may view nonexamining sources 'as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'"  *Id.* (citing SSR 96-6p, 1996 WL 374180).  Thus, "under some circumstances, [opinions from non-examining doctors can] be given significant weight."  *Id.* (alterations in original) (citation omitted).

"Here, any explanation concerning the nature and extent of the relationship between the state agency physicians and Plaintiff, as well as the length and frequency of treatment, is satisfied by simply noting that these physicians are state agency medical consultants.  Such information provides the Court with a clear understanding that these physicians simply reviewed Plaintiff's medical records and rendered opinions without ever physically examining him." *Jackson v. Colvin*, No. 3:13-cv-254, 2014 WL 4348248, at *8 (S.D. Ohio Sept. 2, 2014).

Substantial evidence supports the ALJ's decision to give significant weight to the state agency physicians' opinions because the ALJ reasonably noted in his decision -- in conformance with their findings -- the "very sparse record of treatment"; that "[t]he record is somewhat unclear as to which knee gives [Plaintiff] problems"; "[Plaintiff's] seizure disorder is well

controlled with medication even allowing him to perform very heavy work"; "[Plaintiff] returned to very heavy exertion work activity" after "heart attacks in 2005 and 2008"; "[Plaintiff] has no prescription for a cane"; and the need for a cane is "inconsistent with full-time very heavy work." PageID 74. "[E]ven if there is substantial evidence in the record that would have supported an opposite conclusion[,]" the Court must give deference to ALJ's decision if it is supported by substantial evidence. *Blakely*, 581 F.3d at 406 (citations omitted).

Plaintiff also argues that the ALJ committed reversible error by assigning "significant weight" to the state agency reviewing physicians' opinions, yet deviating from those opinions in his RFC determination by limiting Plaintiff to lifting ten pounds maximum -- instead of being occasionally able to lift and/or carry twenty pounds, as both doctors opined. Doc. 9 at PageID 354-56. Plaintiff claims that in so doing, the ALJ "assume[d] for himself the mantle of a medical expert and generate[d] his own medical opinion." *Id.* at PageID 356.

The Court questions the premise of this argument, as the ALJ's ten pound limitation is *more favorable* to Plaintiff's disability claim than the twenty pound limitation. Nonetheless, the argument is without merit. The determination of a Plaintiff's RFC "is not a medical opinion." *Saunders v. Comm'r of Soc. Sec.*, No. 1:08-cv-1136, 2010 WL 1132245, at *3 (W.D. Mich. Mar. 23, 2010). The "ALJ is not required to adopt verbatim the opinion of any particular doctor . . . [r]ather, it is the province of the ALJ to coalesce all of the record evidence in making [his] RFC determination." *Clayton v. Astrue*, No. 1:12-cv-79, 2013 WL 427407, at *6 (S.D. Ohio Feb. 1, 2013) (internal citations omitted). The ALJ reasonably explained his basis for including the more limiting restriction in Plaintiff's RFC; simply put, he gave Plaintiff the benefit of the doubt: "He testified that he could not lift very much weight so the RFC includes a restriction to lifting 10 pounds maximum, even though in March 2010, he was working at the very heavy level and

there has been no intervening medical condition to justify such a limitation." PageID 74. Finding substantial evidence supports the ALJ's conclusions with regard to the state agency review physicians' opinions, this argument should be overruled.

    **B.    RFC Assessment**

In his next assignment of error, Plaintiff argues that the ALJ failed to provide "function by function" RFC findings under SSR 96-8p, and that his RFC included an ambiguous lifting restriction. Doc. 9 at PageID 353-54. The ALJ found that Plaintiff retained the RFC to perform light work subject to several restrictions, including "lift[ing] 10 pounds maximum." PageID 73. As noted above, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Plaintiff contends that because the ALJ did not specify the frequency with which he could lift ten pounds, the vocational expert's ("VE") response to the ALJ's hypothetical did not constitute substantial evidence that light-exertion jobs existed with the restriction to "lift 10 pounds maximum." Doc. 9 at PageID 353-54.

"In order for a VE's testimony to constitute substantial evidence that a significant number of jobs exist," the hypothetical questions asked of the VE "'must accurately portray a claimant's physical and mental impairments.'" *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011). A VE's response to a hypothetical question -- that accurately portrays the claimant's impairments -- constitutes substantial evidence for determining whether or not a disability exists. *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir. 2005) (internal citations omitted).

SSR 96-8p provides that in determining a Plaintiff's RFC, the ALJ must "assess [Plaintiff's] work-related abilities on a function-by function basis." 1996 WL 374184, at *1 (July 2, 1996). However, the Sixth Circuit recognizes that, while a "function-by function

analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.,* 30 F. App'x 542, 547 (6th Cir. 2002) (internal citation omitted).  The ALJ is not required "to discuss those capacities for which no limitation is alleged," or "decide or discuss uncontested issues." *Id.* at 547-48.  Rather, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* at 548.

Regarding the lifting restriction, the undersigned finds that, based upon the ALJ's entire opinion, and the record as a whole, no ambiguity exists.  During the hearing, the VE identified jobs that a hypothetical person like Plaintiff -- limited to "light exertion" and "lifting not more than 10 pounds" -- would be able to perform.  PageID 100-01.  The VE subsequently clarified that "if an individual is limited to [lifting] 10 pounds on, at most, an *occasional* basis," such an individual would be limited to "[s]edentary" work.  *See* PageID 103 (emphasis added).  Because the ALJ used the same language from the hypothetical he posed to the VE in his written decision, and did not limit Plaintiff's lifting of ten pounds to only an occasional basis, the RFC determined by the ALJ allows for the frequent lifting of up to ten pounds.  The VE's testimony, therefore, constitutes substantial evidence that light exertion jobs exist with this restriction.  *See Pasco*, 137 F. App'x at 845.

Insofar as Plaintiff argues that the ALJ erred by failing to perform a function-by-function analysis regarding Plaintiff's ability to carry, the undersigned finds this argument foreclosed by *Delgado*, 30 F. App'x at 547.  Plaintiff's ability to carry was not a disputed issue in this case. Neither Dr. Kneisley nor Dr. Smith imposed a limitation on Plaintiff's ability to carry.  PageID 330, 278.  Further, Plaintiff did not testify regarding limitations on his ability to carry.  PageID

90. Moreover, Plaintiff's counsel did not attempt to clarify any confusion regarding limitations on his ability to carry during his examination of the VE, as he did regarding Plaintiff's ability to lift. PageID 103. Because the ALJ, in conformance with the medical evidence of record, did not impose a specific limitation on Plaintiff's ability to carry, the undersigned concludes that the RFC reasonably limited Plaintiff to frequently carrying up to ten pounds, as contemplated by the definition of light work. *See* 20 C.F.R. § 404.1567(b).

Based on the foregoing, the undersigned finds no error in this regard.

### C. Credibility Assessment

Plaintiff next challenges the ALJ's credibility finding. Doc. 9 at PageID 358-60. "Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used . . ." *Rogers*, 486 F.3d at 247; *Buxton*, 246 F.3d at 773; *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994)). "First, the ALJ will ask whether . . . there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Id*. (citation omitted). Second, where, as here, "the ALJ finds that such an impairment exists, then he [or she] must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id*. (citations omitted); *see also* SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996).

Plaintiff challenges the ALJ's conclusion at the second part of the analysis. In evaluating this second prong, the ALJ must consider a number of "[r]elevant factors," namely: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) other treatment undertaken to relieve symptoms; (6) other measures taken to relieve symptoms, such as lying on one's back;

and (7) any other factors bearing on the limitations of the claimant to perform basic functions. 20 C.F.R. § 404.1529(c)(3); *see also Rogers*, 486 F.3d at 247.

The ALJ, and not this Court, "evaluate[s] the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. A claimant's credibility comes into question when his or her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence[.]" *Id*. To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id*. To that end, "the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility'" and such determinations "must find support in the record." *Id*. This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

In discounting Plaintiff's credibility, the ALJ -- after personally observing Plaintiff at the administrative hearing -- reasonably concluded that "[t]he record simply does not support the assertion that [Plaintiff], who was working at the very heavy level and gets fired, becomes somehow reduced to performing at most sedentary work without some intervening medical condition." PageID 76. Plaintiff argues that the ALJ's analysis in this regard is incorrect because he received a pair of cortisone injections in early 2010, close to his alleged onset date in March 2010, and therefore, the ALJ unreasonably concluded that Plaintiff "must have exaggerated his conditions." Doc. 9 at PageID 358.

The Court finds the ALJ's credibility analysis supported by substantial evidence. As an initial matter, Plaintiff fails to explain how receiving corticosteroid injections that temporarily improved his knee condition constitutes an "intervening medical condition" limiting him to sedentary work. Further, as the ALJ noted, the record is not clear as to which knee allegedly limited Plaintiff's ability to work. As discussed, Plaintiff received the injection at issue in his *left* knee, PageID 267, and then -- seven months later -- reported to examining physician Dr. Smith that his *right* knee caused him pain, and denied ever having problems with his left knee. PageID 278. This inconsistency entitled the ALJ to discount Plaintiff's credibility.[7] *See Rogers*, 486 F.3d at 248 ("[c]onsistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect").

## IV.

For the foregoing reasons, the Court finds Plaintiff's assignments of error unmeritorious.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found supported by substantial evidence, and **AFFIRMED**; and

2. This case be **CLOSED** on the Court's docket.

Date: January 26, 2015                         s/ Michael J. Newman
                                               Michael J. Newman
                                               United States Magistrate Judge

---

[7] To the extent that Plaintiff argues the ALJ erred by finding his statements about his symptoms not fully credible, yet included a restriction in the RFC based on his testimony, doc. 9 at PageID 359, the undersigned finds his argument without merit. An ALJ may properly give Plaintiff 'the benefit of the doubt' in constructing his RFC, while simultaneously questioning Plaintiff's credibility, without committing reversible error. *Rasnake v. Comm'r of Soc. Sec.*, No. 3:12-cv-36, 2013 WL 80361, at *5 (S.D. Ohio Jan. 7, 2013).

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).